Sanford Shatz      State Bar No. 127229
Sandy_Shatz@Countrywide.com
5220 Las Virgenes Road, MS: AC-11
Calabasas, California 91302
Telephone: (818) 871-6062
Fax: (818) 871-4669

Attorneys for Defendants Countrywide Home Loans Inc., individually and dba America's Wholesale Lender, and ReconTrust Company

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO TINA, and JESUS G. TINA, ) | Case No.: 08 CV 1233 H AJB |
| ) | |
| Plaintiffs, ) | OPPOSITION TO EX PARTE |
| ) | APPLICATION FOR TEMPORARY |
| vs. ) | RESTRAINING ORDER AND |
| ) | ORDER TO SHOW CAUSE RE |
| COUNTRYWIDE HOME LOANS, ) | PRELIMINARY INJUNCTION |
| INC.; AMERICA'S WHOLESALE ) | |
| LENDER; RECONTRUST ) | Judge: Marilyn L. Huff |
| COMPANY; ) | Date: |
| ) | Time: |
| Defendants. ) | Courtroom: 13 |
| ) | |
| | [Filed concurrently with Declaration of Kirsten Braithwaite] |

Defendant Countrywide Home Loans, Inc. ("Countrywide"), individually and dba America's Wholesale Lender, and Defendant ReconTrust Company ("RT") oppose Plaintiffs Rosario Tina and Jesus G. Tina's (the "Tinas") Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Application").

I. INTRODUCTION AND STATEMENT OF ISSUES.

The Tinas refinanced their home in 2006 and obtained a first position loan for $486,500 and a second position loan of $69,500 from Countrywide. As part of the loan transaction, the Tinas received more than $157,000 in cash from the transaction. While they initially made payments on their loan, the payments stopped less than one year after they received the money. When no further payments were made, Countrywide began foreclosure proceedings and completed the foreclosure sale on July 11, 2008. Despite their having failed to make payments for almost one year, the Tinas sought to block the foreclosure sale, and seek to set it aside, for unspecified reasons without any evidentiary support. There is no basis to their claims and the court should deny the application for an injunction.

The application to enjoin the foreclosure sale is moot. The foreclosure sale occurred on July 11, 2008, at approximately 10:00 a.m. Even if the foreclosure sale had not occurred, the Tinas lack standing to challenge the foreclosure sale because they have not, and admittedly cannot, tender the undisputed amount owing, or any amount. In addition, the Tinas offer no facts to support their claim for an injunction, and can meet none of the jurisdictional prerequisites. There is no basis to award an injunction, and it should be denied.

II. SUMMARY OF FACTUAL ALLEGATIONS.

A. Allegations In The Application.

The sole facts offered in support of the application for an injunction are found in the declaration of Rosario Tina.

Tina alleges that on August 15, 2006, she and her husband obtained a loan from Countrywide. She alleges that she signed documents that she did not understand and obtained a loan that is set for foreclosure on July 11, 2008.

Tina does not allege any facts about the loan broker who helped her obtain

s:\ss\lc\Tina-JG\tro-opp.doc — 2 —
OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO

the loan. Tina does not allege any facts about what she received from the loan, including all of the "cash out" portion. Tina does not allege any facts to show that she repaid any portion of the loan. Tina does not allege any facts of any type about Countrywide, or provide any basis for an injunction.

B. The Loan Transaction.

In August 2006, the Tinas had a loan on their property with Washington Mutual Bank. The Tinas located a broker, Morningstar Capital Corporation, and sought a loan. The loan broker put together a loan application package, and shopped it to, among others, Countrywide.

Based on the broker's submission on behalf of the Tinas, Countrywide offered to make the Tinas a first position loan for $486,500 and a second position loan for $69,500. The Tinas accepted the loan terms, and signed the loan documents.

On August 18, 2006, the loan transaction closed. The existing Washington Mutual loan was paid off through escrow, the Tinas paid approximately $4,000 to hazard insurance and property taxes, the Tinas paid their broker approximately $6,000, and the Tinas received approximately $157,000 from escrow. (See HUD-1 closing statement, Ex. "C.") The Tinas do not allege what they did with their $157,000.

The Tinas began repaying the loan in October 2006, as agreed. They made payments through August 2007, when they defaulted. The Tinas offer no explanation for their default.

Countrywide began foreclosure proceedings in March 2008. When the default was not cured, in June 2008, the trustee, ReconTrust Company, set a foreclosure sale for July 11, 2008. The sale took place as noticed at 10:00 a.m.

### III. THE COURT SHOULD DENY THE APPLICATION FOR PRELIMINARY INJUNCTION BECAUSE IT IS MOOT.

The Tinas seek to enjoin Countrywide's foreclosure sale. However, the foreclosure sale has already occurred, and cannot now be enjoined.

The foreclosure sale occurred on July 11, 2008, at 10:00 a.m. (See Tapia decl., ¶ 6.) Because the foreclosure sale has already occurred, the court should not enjoin it.

### IV. THE TINAS LACK STANDING TO SEEK AN INJUNCTION TO CHALLENGE THE FORECLOSURE SALE BECAUSE THEY HAVE NOT TENDERED THE UNDISPUTED AMOUNT OWING ON THE LOAN.

A party cannot enjoin a foreclosure sale unless it has tendered the undisputed obligation in full. (Sierra-Bay Fed. Land Bank Ass'n v. Superior Court (1991) 227 Cal.App.3d 318, 337 ("the debtor must offer to do equity by making a tender or otherwise offering to pay his debt"); United States Cold Storage v. Great W. Sav. & Loan Ass'n (1985) 165 Cal.App.3d 1214, 1222 ("the law is long-established that a *trustor* or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale"); Karlsen v. American Sav. & Loan Ass'n (1971) 15 Cal.App.3d 112, 117 ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."); Roger Bernhardt, CALIFORNIA MORTGAGE & DEED OF TRUST PRACTICE (C.E.B. 3d ed.) § 7.37 ("Courts usually require the trustor to pay or to tender payment of any amounts admittedly owed the beneficiary as a condition for issuing a temporary restraining order or preliminary injunction.").

> "It would be futile to set aside a foreclosure sale on the technical grounds that notice was improper, if the party making the challenge did not first make full tender and

>thereby establish his ability to purchase the property.
>
>Thus, it is sensible to require that a trustor, whose default to begin with resulted in the foreclosure, give proof before the sale is set aside that he now can redeem the property."

(<u>United States Cold Storage</u>, 165 Cal. App. 3d at 1225.)

In the present case, the Tinas have not tendered, nor do they allege to have tendered, the undisputed amount owing under the Note to Countrywide. The Tinas, who are behind on their mortgage, claim they cannot afford a bond of any type. Com. ¶ 41. They have no money. The last payment received by Countrywide was in August 2007. No payments have been received in the last eleven months. Unless and until the Tinas tender the undisputed obligation in full, they do not have standing to challenge the foreclosure sale, and their request for an injunction should be denied.

## V. <u>THE COURT SHOULD NOT GRANT AN INJUNCTION AGAINST COUNTRYWIDE BECAUSE THE TINAS MAKE NO SHOWING AGAINST COUNTRYWIDE</u>.

The Tinas seek an injunction against Countrywide merely to delay the foreclosure sale, without any basis in law or fact. The Tinas make no allegation that Countrywide acted wrongfully. The Tinas do not dispute that they signed the loan documents. The Tinas do not allege any deficiency in the foreclosure procedure. The Tinas fails to make any showing that would entitle them to any injunction blocking Countrywide's foreclosure sale.

The traditional equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in

1  certain cases). (<u>Sierra Club v. Hathaway</u>, 579 F.2d 1162, 1167 (9th Cir. 1978).)
2  None of these factors applies to the Tinas' Application.
3     The Tinas offer no basis for a preliminary injunction against Countrywide.
4  They cannot show that they have a strong likelihood of success on the merits
5  against Countrywide. The Tinas cannot show that a balance of hardships favors
6  them. An injunction will not further the public interest.
7     The sole cause of the Tinas' distress is their own failure to make mortgage
8  payments—a failure for which Countrywide is in no way responsible. The Tinas
9  made payments on this loan for eleven months after it was originated, with
10  apparently no complaints concerning fraud, or any of the other claims in the
11  complaint. Countrywide is entitled to get paid on its loan, but has not received a
12  payment since August, 2007. (See Braithwaite Decl., ¶ 7.) Countrywide should
13  be able to protect its interest and proceed with the foreclosure sale last Friday.
14  Countrywide respectfully requests that the court deny the Tinas' Application.
15     A.   <u>The Tinas Fail To Establish A Strong Likelihood of Success on The
16          Merits.</u>
17     The Tinas do not and cannot show a strong likelihood of success on the
18  merits against Countrywide. No payment has been made on the loan since August,
19  2007. The loan is in default. Foreclosure is proper. No defect in the foreclosure
20  procedure exists. The Tinas have not reinstated the loan. The Tinas have no claim
21  against Countrywide.
22     The Tinas' claims are difficult to discern. The complaint is pled in vague
23  generalities. The Tinas claim that they are not native English speakers and
24  California Civil Code section 1632 requires that the mortgage be translated into
25  their language. The Tinas misread section 1632. Under section 15632, "[a]ny
26  person engaged in a trade or business who negotiates primarily in Tagalog . . . ,
27  orally or in writing, in the course of entering into [a variety of agreements] shall
28  deliver to the other party to the contract or agreement ***and prior to the execution***

*thereof*, a translation of the contract or agreement in the language in which the contract or agreement was negotiated . . . ." (Civil Code § 1632(b) (emphasis added).) In other words, only those persons who negotiate directly with a person in Tagalog are obligated to provide translations of the negotiated contract or agreement "prior to the execution thereof." Note that the Tinas do not allege the language that they speak, and Countrywide is guessing that it is Tagalog.

However, The Tinas did not negotiate their loan with Countrywide. They used a loan broker who shopped their loan to, among others, Countrywide. The Tinas do not allege that they had any direct contact with Countrywide, or that Countrywide spoke to them in any language other than English.

The Tinas claim that they had high credit scores and asked for a fixed rate loan. The Tinas offer no explanation as to why their broker placed them in an adjustable rate loan. However, Countrywide provided the loan that was requested, and the Tinas accepted it. In addition, the Tinas do not state what they did with their $157,000 cash out or why they waited more than two years to complain about their loan. (See Ruiz v. Decision One Mortgage Co., 2006 U.S. Dist. LEXIS 54571, *14-15 (N.D. Cal. 2006) (dismissing claim of direct liability against Decision One, which did not negotiate the contract with Plaintiffs, and recognizing the need to allege facts supporting an agency relationship in order to assert secondary liability against Decision One under the CTA).)

The Tinas attempt to assert a claim for unfair competition based on an alleged fiduciary relationship with Countrywide. While the Tinas have a fiduciary relationship with their loan broker, there is no fiduciary relationship between Countrywide, the lender, and the Tinas, the borrowers. "As a general rule a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Federal Savings & Loan Association, 231 Cal.App.3d 1089 (1991). A duty arises "only when the lender

'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" Connor v. Great Western Savings & Loan Association, 69 Cal.2d 850, 864 (1968) (the bank was not merely a lender because it actively participated in the borrowers' enterprise to construct homes by working to develop the property). While California law imposes a fiduciary duty upon a mortgage broker for the benefit of the borrower, UMET Trust v. Santa Monica Medical Investment Company, 140 Cal.App.3d 864, 872-73 (1983), no such duty is imposed on a lender. See also Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 476 (1989). "It has long been regarded as axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor. A debt is not a trust and there is not a fiduciary relationship between debtor and creditor as such. The same principal should apply with even greater clarity to the relationship between a bank and its loan customers."

Even in the absence of a fiduciary relationship, there is no basis for an unfair competition claim. The Tinas' claim based on alleged violations of Business and Professions Code section 17200 fails to make any mention of Countrywide. Section 17200 "is not an all-purpose substitute for a tort or contract action." (Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 173.) Countrywide was not a party to the alleged discussions at loan origination. The Tinas do not and cannot allege that Countrywide acted unlawfully, fraudulently or unfairly, because it is not even mentioned in the claim. There is no likelihood of success on this claim.

    B.    <u>The Tinas Cannot Show Any Irreparable Injury Caused By Countrywide.</u>

The Tinas cannot show irreparable injury as a result of any act or omission by Countrywide. When the Tinas borrowed money and signed the Note and Deed of Trust, it was agreed that in the event of a default, Countrywide could enforce its rights and foreclose on the Property. The last payment on the loan was received in

August, 2007. (Braithwaite Decl, ¶ 7.) The loan is in default. Countrywide properly began foreclosure proceedings.

The Tinas will not suffer great or irreparable injury because of any act or omission by Countrywide. The harm will be caused solely by the Tinas and the Tinas not making the loan payments. The Tinas have not paid their mortgage and as a result are facing foreclosure. The Tinas' failure to fulfill financial obligations is the sole cause of their alleged injury. There is no basis for an injunction blocking the sale by Countrywide.

### C.  The Balancing of the Hardships Do Not Favor The Tinas.

The Tinas have no claim—much less *any* remedy—against Countrywide. Countrywide has not wronged the Tinas. Countrywide has a loan and is entitled to get paid on that loan. Countrywide properly foreclosed, and the sale should not be enjoined.

### D.  The Public Interest Is Not Advanced by Granting the Application.

An injunction in this case will not advance the public interest. Countrywide should not be involved in *any* proceeding because it has not harmed nor hurt the Tinas in any manner. Countrywide provided the Tinas with hundreds of thousands of dollars, repaid their existing loan, and gave them more than $150,000. Countrywide expects to be repaid for its efforts..

What cannot be disregarded is that the Tinas signed a note and deed of trust in August 2006, yet inexplicably waited almost two years to bring this action. Why the delay? The Tinas' action appears to be simply a tactic to avoid foreclosure. The public interest is not advanced by granting an Application based on the Tinas' alleged circumstances.

## VI.  CONCLUSION.

The Tinas obtained a loan which paid off their existing debt and gave them more than $157,000. They repaid their new loan for eleven months and then

1  defaulted. They have made no payments in almost one year. Countrywide
2  exercised its contractual remedy of foreclosure to enforce the debt. The Tinas now
3  bring this application, without any evidentiary support, to seek to enjoin the
4  already-completed foreclosure sale. There is no basis for an injunction.
5  Countrywide respectfully requests that the Court deny the Tinas' Application.

DATED: July 15, 2008                    By:      /s/ Sanford Shatz….
                                                 SANFORD SHATZ
                                                 Attorneys for Defendants
                                                 Countrywide Home Loans, Inc.,
                                                 individually and dba America's
                                                 Wholesale Lender, and
                                                 ReconTrust Company

# PROOF OF SERVICE
(C.C.P. section 1013a(3))

STATE OF CALIFORNIA      )
                         ) SS.
COUNTY OF LOS ANGELES    )

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 5220 Las Virgenes Road, MS: AC-11, Calabasas, California 91302.

On July 15, 2008, I served OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION on all interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Rosario Tina
Jesus G. Tina
1220 Manchester Street
National City, CA 91950

[X]  (**BY MAIL**) On July 15, 2008, I placed said envelopes for collection and mailing, following ordinary business practices, at the business offices of Countrywide Home Loans, Inc., at the address set forth above, for deposit in the United States Postal Service. I am readily familiar with the practice of Countrywide Home Loans, Inc. for collection and processing of correspondence for mailing with the United States Postal Service, and said envelopes will be deposited with the United States Postal Service on said date in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct. Executed on July 15, 2008, at Calabasas, California.

………/s/ Desiree Rais…….
Desiree Rais